IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

AGNES CAMPBELL,           )
                          )
        Plaintiff,        )
                          )
                          )    CIV-13-358-L
v.                        )
                          )
CAROLYN W. COLVIN,        )
  Acting Commissioner of Social )
  Security Administration,    )
                          )
        Defendant.        )

REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423. The Defendant Commissioner has answered the Complaint and filed the administrative record (hereinafter TR___), and the parties have briefed the issues. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the Commissioner's decision be affirmed.

I. Background

Plaintiff filed an application for benefits on November 3, 2008. (TR 117-118). At that time, she was 49 years old, she had three years of college, and she was working full-time as

1

a postal clerk. (TR 117, 118, 138, 165). Curiously, she alleged she became disabled on June 15, 1968.[1] (TR 117). Plaintiff later asserted that she stopped working on June 1, 2009, and became unable to work on August 21, 2009, due to cervical neck strain and bilateral shoulder strain. (TR 158-159).

In a written function report dated November 4, 2009 (TR 167-174), Plaintiff stated that she was "medically retired," was undergoing physical therapy three times a week for her neck, and that she sometimes had difficulty reaching her back and up to her head due to neck and shoulder pain. She described a variety of usual daily activities, including light housekeeping, driving to her therapy appointments and to her brother's house for social visits, shopping for groceries and necessities, eating out with her friends or husband, doing laundry, cooking, feeding her pet, loading the dishwasher, vacuuming, reading, walking three to four times a week, gardening in the summer, and lifting up to ten pounds. She stated that her spouse helped with household chores. (TR 182, 189).

The record shows Plaintiff was treated by Dr. David Clemens, M.D., in 2008 and 2009 for sinusitis, allergic rhinitis, gastrointestinal reflux disease, and osteoarthritis. In October 2009, Dr. Clemens noted that Plaintiff was "leaving for Mexico on Friday" and wanted a "tamiflu [prescription] to take with her" and allergy medication. (TR 367). Plaintiff was also treated by Dr. Blomgren, M.D., beginning in July 2010 for high cholesterol and depression. She stated she was seeing a "Worker's Comp doctor for pain meds." (TR 371). Dr.

---

[1]The agency imposed a protective filing date of September 25, 2009, and December 13, 2013, as the date Plaintiff was last insured for Title II benefits. (TR 176).

Blomgren prescribed anti-depressant medication for Plaintiff in September 2010 based on her reported symptoms, including low energy, trouble sleeping, and poor appetite, and the observation that she looked tired and exhibited a flat affect. (TR 373-374). In subsequent follow-up examinations in October 2010, November 2010, and June 2011, Plaintiff reported improvement in her mental status. (TR 399, 403, 405).

As a worker's compensation independent medical examiner, Dr. John Ellis, M.D., completed extensive reports for Plaintiff's worker's compensation case before the United States Department of Labor on November 24, 2008, April 16, 2009, January 5, 2010, and June 2, 2011. (TR 322-330, 332-336, 337-350, 383-391). These reports reveal that Plaintiff underwent arthroscopic surgeries on her right shoulder in January 2000 and her left shoulder in March 2002. (TR 337). In June 2003, she underwent cervical discectomy and fusion at the C6-7 level of her cervical spine. (TR 338).

In the January 2010 and June 2011 reports, Dr. Ellis noted that an EMG and nerve conduction study of Plaintiff's upper extremities was negative for cervical radiculopathy or peripheral nerve impingement in her hands or arms. (TR 344, 389). Dr. Ellis noted that no surgery was indicated because of this negative test result. (TR 389). Nevertheless, Dr. Ellis noted in the January 2010 report that Plaintiff was "now permanently and totally disabled and unable to engage in any type of gainful activity for the rest of her life." (TR 347). He repeated this opinion in the June 2011 report. (TR 389).

The record contains office notes of treatment of Plaintiff, generally by an individual named "Kelly," in Dr. Ellis's clinic from April 16, 2009 through March 2, 2010. (TR 268-

3

274). On April 16, 2009, Dr. Ellis prescribed pain and muscle relaxant medication without entering a diagnostic assessment in his progress notes. (TR 274).

Plaintiff was treated by Dr. Jarrell, a neurology and pain medication specialist, in August and September 2009. Dr. Jarrell's office notes indicate Plaintiff described chronic neck pain with radiation to the shoulders and arms. Dr. Jarrell noted he interpreted an April 2009 MRI test of Plaintiff's cervical spine as showing a "stable anterior fusion and discectomy at C6-7" and "mild foraminal narrowing" at C5-6. (TR 294). Dr. Jarrell recommended a cervical epidural injection for Plaintiff's cervical syndrome. (TR 294). Plaintiff underwent two injections in her cervical spine. (TR 297-298).

In September 2009, Plaintiff reported to "Kelly" in Dr. Ellis's clinic that the injections had helped although she continued to have reduced range of motion, pain, tenderness, and muscle spasms, for which she was using a TENS unit. (TR 272). "Kelly" referred Plaintiff for physical therapy. (TR 272).

Dr. Ellis completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical) dated August 5, 2011. (TR 392-397). In this medical source opinion, Dr. Ellis stated that Plaintiff is "unable to work an 8 hour work day" and Plaintiff's "condition renders her permanently [and] totally disabled." (TR 393, 394).

Plaintiff underwent a consultative psychological evaluation in January 2010, conducted by Dr. Amal Chakraburtty. (TR 235-238). Dr. Chakraburtty reported that Plaintiff gave a history of "working in the U.S. postal service, sustained neck and shoulder injuries that caused her to take medical retirement in September 2009." (TR 235). Plaintiff

4

reportedly stated she had not received any psychiatric treatment except for one time in 1998 and she "does not have any mental illness at the present time that needs treatment." (TR 235). She reported taking pain medication "off and on for 'some time.'" (TR 236). Dr. Chakraburtty noted that in a mental status examination Plaintiff "had somatic fixation in general and chronic persistent pain in particular," but no deficits in cognitive testing, and she exhibited a "wide ranged and jovial" affect. (TR 236). A diagnostic impression was mood disorder due to general medical condition. (TR 237). However, Dr. Chakraburtty opined that Plaintiff was "functioning reasonably well in her psychosocial aspect of life" and had no "active mental health problem that need[ed] urgent intervention." (TR 237).

In February 2010, Plaintiff was examined by a podiatrist, Dr. Hall, who diagnosed her with plantar fasciitis and ingrown toenails. (TR 363). Dr. Hall noted that Plaintiff complained of pain "off and on for one year" in her feet and that she exhibited full muscle strength, normal muscle tone, and unremarkable joints. (TR 363).

Plaintiff declined to appear at an administrative hearing. (TR 116, 195). At the hearing conducted in August 2011 before Administrative Law Judge McLean ("ALJ"), Plaintiff's attorney appeared, and a vocational expert ("VE") testified. (TR 26-43). The ALJ requested that Plaintiff's attorney provide "the entire Department of Labor file on this claim and should include the awards [sic]." (TR 35).

The only Department of Labor award letter appearing in the record is an award dated November 8, 2010. In this award letter, Plaintiff received a worker's compensation award from the United States Department of Labor for the period of February 1, 2010 to August 16,

2010.² (TR 149-151). The award reflects the findings that Plaintiff had suffered a 9 percent additional impairment of her right upper extremity and no additional impairment of her left upper extremity. The award describes a date of maximum medical improvement of June 3, 2004. (TR 149).

In November 2011, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (TR 10-25). The ALJ found that Plaintiff had not engaged in substantial gainful activity since August 21, 2009, her alleged disability onset date, and that Plaintiff had severe impairments due to "cervical spine disorder, right and left shoulder disorder, status post right shoulder arthroscopy (2000) followed by a return to work, status post left shoulder arthroscopy (2002) followed by a return to work and status post cervical discectomy (2003) followed by a return to work." (TR 12).

The ALJ found that despite her impairments Plaintiff retained the residual functional capacity ("RFC") for a limited range of light work. (TR 21). Her ability to work was limited by the inability to balance or climb ladders, ropes or scaffolds, the inability to reach overhead bilaterally, and limited to work not requiring exposure to machine vibrations. (TR 21). Based on this RFC for work, the ALJ found that Plaintiff was capable of performing her past relevant work as a postal clerk. (TR 23). Relying on the VE's testimony at the administrative

---

²In order to receive this award, it would seem that Plaintiff was still considered a Postal Service employee for the relevant time period. See http://www.dol.gov/owcp/. Nothing in the record explains this discrepancy between her alleged onset date of August 21, 2009, and the award of worker's compensation benefits for a seven-month time period in 2010. However, in light of the ultimate finding and recommendation set forth herein, it is not necessary to resolve this discrepancy.

6

hearing, the ALJ further found that Plaintiff was capable of performing other work available in the economy given her vocational characteristics and RFC for work, including the jobs of ticket taker and office helper. (TR 23-25).

The Appeals Council denied Plaintiff's request for review, and therefore the ALJ's decision is the final decision of the Commissioner. See 20 C.F.R. § 404.981; Wall v. Astrue, 561 F.3d 1048, 1051 (10th Cir. 2009).

II. Standard of Review

In this case, judicial review of the final Commissioner's decision is limited to a determination of whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010); Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). The "determination of whether the ALJ's ruling is supported by substantial evidence must be based upon the record taken as a whole. Consequently, [the Court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the record." Wall, 561 F.3d at 1052 (citations, internal quotation marks, and brackets omitted).

III. Analysis of Treating Doctor's Opinion

Plaintiff contends that the ALJ did not properly analyze the opinion of her treating physician, Dr. Ellis. Plaintiff asserts that Dr. Ellis stated his opinion was based on his

7

examination of Plaintiff "as well as studies and a MRI" and therefore the opinion should have been given controlling weight as it was well-supported by objective evidence. Plaintiff's Opening Brief, at 9-10. The Commissioner responds that the ALJ provided reasons that are well supported by evidence in the record for finding that Dr. Ellis's opinion was entitled to little or no weight.

When an ALJ considers the opinion of a disability claimant's treating physician, the ALJ must follow a specific procedure in analyzing the medical opinion. Generally, an ALJ must give the opinion of an acceptable treating source controlling weight if it is both well-supported by medically acceptable clinical and laboratory diagnostic techniques and consistent with other substantial evidence in the record. Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting SSR 96-2p, 1996 WL 374188, at *2). Where an ALJ finds that a treating physician's opinion is not entitled to controlling weight, the ALJ must decide "where the opinion should be rejected altogether or assigned some lesser weight." Pisciotta v. Astrue, 500 F.3d 1074, 1077 (10th Cir. 2007).

"Treating source medical opinions not entitled to controlling weight 'are still entitled to deference' and must be evaluated in light of the factors in the relevant regulations, 20 C.F.R. §§ 404.1527 and 416.927." Newbold v. Colvin, 718 F.3d. 1257, 1265 (10th Cir. 2013)(quoting Watkins, 350 F.3d at 1300). An opinion that a claimant is disabled "is not dispositive because final responsibility for determining the ultimate issue of disability is reserved to the [Commissioner.]" Castellano v. Sec'y of Health & Human Servs., 26 F.3d 1027, 1029 (10th Cir. 1994).

The ALJ recognized in the decision that Dr. Ellis examined Plaintiff and prepared reports for purposes of Plaintiff's worker's compensation claims in 2007 and 2009 and that Dr. Ellis provided a written medical source statement in June 2011. (TR 21). The ALJ recognized that Dr. Ellis was a treating physician considering the progress notes of treatment of Plaintiff at his clinic appearing in the record. (TR 21).

With respect to Dr. Ellis's opinion that Plaintiff was permanently and totally disabled and unable to engage in any type of gainful activity for the rest of her life, the ALJ appropriately determined that this opinion was not entitled to controlling weight because it "encroache[d] on an issue reserved to the Commissioner." (TR 21). See 20 C.F.R. §404.1527(d)(medical source opinions on issues reserved to the Commissioner, i.e., opinions that a claimant is disabled, are not medical opinions).

In his medical source statement, Dr. Ellis stated that Plaintiff could sit for only one hour at a time or three hours in an 8-hour workday, stand or walk for only 10 to 15 minutes at a time or one hour in an 8-hour workday, and would need to lie or recline throughout the day. (TR 393). The ALJ found that this opinion was entitled to "no weight" because it was not consistent with other evidence in the record. (TR 22). The ALJ first found that Dr. Ellis's statements concerning Plaintiff's daily activities contained in his worker's compenstion reports were not consistent with Plaintiff's own statements in the record concerning her usual activities, and the ALJ pointed to specific parts of the record to support the finding.[3] There

---

[3]The ALJ's reference to Exhibit 3F in this discussion was apparently an inadvertent typographical error, as it is Exhibit 3E in which Plaintiff provides a written statement concerning

9

is substantial evidence in the record to support this finding.

Plaintiff alleges that the ALJ's reliance on her statements of her daily activities "paint[s] a false picture" because Plaintiff pointed out that her husband helped "feed the dog," that she indicated she performed household chores at a slower pace, that she stated she was "not sure if I am doing any gardening," and she only vacuumed one room at a time every two or three weeks. (TR 168-169, 171). None of these statements detract from the ALJ's assessment that Plaintiff indicated a wide range of daily activities that were not consistent with Dr. Ellis's statements concerning her ability to perform similar activities. In fact, Plaintiff stated she could load the dishwasher, vacuum, do laundry, cook for up to two hours two to four times per week, lift ten pounds, and that she read, watched television, gardened, walked, dined out and sang karaoke with friends, and shopped for groceries and necessities on a regular basis. Even if Plaintiff received help with household chores or believed it took longer to perform some chores, her statements concerning her activities were entirely inconsistent with Dr. Ellis's statements concerning her ability to perform those same or similar activities, and the ALJ properly relied on that inconsistency in determining whether to give controlling weight, or any weight, to Dr. Ellis's opinions.

The ALJ also found that Dr. Ellis's opinion was not consistent with other substantial evidence in the record. (TR 22). The ALJ pointed to specific evidence in the record, including the November 2010 worker's compensation award stating that Plaintiff had reached

---

her usual daily activities.

maximum medical improvement on June 3, 2004, and that she was awarded compensation for a seven month period in 2010 for only a 9% additional impairment to her right upper extremity and no additional impairment to her left upper extremity. (TR 22). The ALJ also pointed to the opinions of the agency medical consultant, Dr. Marks-Snelling, that Plaintiff was capable of performing light work with manipulative limitations on reaching. The ALJ further noted that the EMG study of Plaintiff's upper extremities in 2009 was negative, that another agency medical consultant, Dr. Woodcock, agreed with the RFC assessment of Dr. Marks-Snelling, and that Plaintiff had returned to work after her shoulder and neck surgeries for an extended period of time. (TR 22).

Plaintiff asserts that two of Dr. Ellis's worker's compensation reports in 2007 and 2009 supported his medical opinions. However, these reports were completed before Plaintiff stopped working and before she alleged her disability began. Plaintiff also relies on Dr. Ellis's June 2011 worker's compensation report. However, in this report Dr. Ellis recognized that an EMG and nerve conduction study of Plaintiff's upper extremities was negative and that surgery was not indicated because of the test result. Further, as the ALJ pointed out, Plaintiff's worker's compensation award in November 2010 reflected that her right-sided upper extremity impairment had only worsened to a minor degree and that her left-sided upper extremity impairment had not worsened at all after her date of maximum medical improvement in 2004.

Contrary to Plaintiff's assertion, Dr. Clemens' October 2008 diagnosis of "chronic pain syndrome" does not provide medical evidence supporting Dr. Ellis's medical source

11

opinion of disabling physical limitations. At the time this diagnosis was rendered, Plaintiff was still employed as a postal clerk. Further, the diagnosis, without more, does not indicate the presence of disabling limitations.

As the ALJ pointed out in the decision, a MRI of Plaintiff's cervical spine conducted in April 2009 showed a stable anterior fusion and discectomy at one level and only mild foraminal narrowing at a second level, as interpreted by Dr. Jarrell in August 2009. (TR 294). Further, Dr. Ellis's progress notes, most of which were made by an unidentified staff member in his clinic, were brief and did not present objective medical findings of significant limitations. The examination findings and complaints in Dr. Ellis's worker's compensation report dated January 5, 2010, are identical or nearly identical to those contained in his June 2011 worker's compensation report. (TR 240, 247-249, 384, 387-389). The findings revealed an unidentified loss of range of motion in the cervical and thoracic spine and shoulders and some decreased sensation in Plaintiff's hands, but no other significant deficits. Additionally, Plaintiff stated to Dr. Chakraburtty that she only took her prescribed pain medication occasionally, and when she was examined by Dr. Blomgren in September 2010 the physician noted Plaintiff denied joint pain or stiffness or loss of function. Because the ALJ's finding that no weight should be given to Dr. Ellis's medical opinion is supported by substantial evidence in the record, and the ALJ followed the proper legal standard for evaluating the opinion, the ALJ's decision in this regard should not be disturbed.

IV. RFC Assessment

The ALJ found that Plaintiff had the RFC to perform a limited range of light work.

Plaintiff argues that there is not substantial evidence to support the ALJ's RFC assessment. To the extent this argument is based on Dr. Ellis's medical source statement, the previous discussion is dispositive. As previously found, the ALJ did not err in evaluating the medical source statement, and substantial evidence in the record supported the ALJ's finding that the opinion was entitled to no weight. The ALJ also gave reasons well supported by the record for finding that Dr. Ellis's statements in his worker's compensation reports concerning Plaintiff's subjective functional limitations were inconsistent with Plaintiff's own statements concerning her usual daily activities and functional abilities. Therefore, no error occurred as a result of the ALJ's failure to incorporate Dr. Ellis's opinion or statements concerning Plaintiff's functional limitations into the RFC assessment.

V. Credibility

Plaintiff contends that the ALJ erred in evaluating the credibility of her allegation of disabling pain. The analysis required of administrative factfinders for pain complaints is well established. "A claimant's subjective allegation of pain is not sufficient in itself to establish disability." Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993). Instead, "[b]efore the ALJ need even consider any subjective evidence of pain, the claimant must first prove by objective medical evidence the existence of a pain-producing impairment that could reasonably be expected to produce the alleged disabling pain." Id. The relevant procedure requires the ALJ to consider and determine (1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is at least a "loose nexus" between that impairment and the claimant's subjective allegations of pain; and

13

(3) if so, whether, considering all of the evidence, both objective and subjective, the claimant's pain was in fact disabling. Luna v. Bowen, 834 F.2d 161, 163-164 (10th Cir. 1987).

To find that a claimant's pain is disabling, the "pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment." Brown v. Bowen, 801 F.2d 361, 362-363 (10th Cir. 1986)(internal quotation omitted). "Subjective complaints of pain must be evaluated in light of plaintiff's credibility and the medical evidence." Ellison v. Secretary of Health & Human Servs., 929 F.2d 534, 537 (10th Cir. 1990).

In assessing the credibility of a subjective allegation of disabling pain, the ALJ must consider such factors as

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Hargis v. Sullivan, 945 F.2d 1482, 1489 (10th Cir. 1991); see Luna, 834 F.2d at 165-166; 20 C.F.R. § 404.1529(c)(3) (listing seven factors relevant to credibility analysis); Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at * 3 (same).

Plaintiff did not appear at the administrative hearing. Thus, the ALJ did not have the

benefit of her testimony in determining the relevant issues, including credibility. Nevertheless, the ALJ expressly considered a letter submitted by Plaintiff's attorney that he stated would summarize Plaintiff's proposed testimony. The ALJ then set forth Plaintiff's statements concerning her daily activities, including statements in the record that were not consistent with her attorney's summarization of her proposed testimony, including her statements that she had lunch with friends on a regular basis and that walking was one of her hobbies. (TR 19). The ALJ further recognized that Plaintiff returned to work following her shoulder and neck surgeries, that there was a "significant gap in her treatment record" between 2003 and 2008, that she told her treating physician she was leaving for Mexico on vacation after the date she alleged she became disabled, and that her treating physician noted that she denied joint pain, joint stiffness, loss of function or muscle weakness. The record supports these statements. The ALJ also pointed to the medical evidence in the record, including the result of a cervical MRI in April 2009, and an EMG in April 2009, neither of which showed the presence of significant cervical or neurological deficits. The ALJ also considered her medications and the absence of evidence in the record that she had complained about adverse medication side effects to her treating or examining physicians. Having considered several relevant factors in determining credibility, the ALJ concluded that Plaintiff's complaints of disabling pain and limitations were only partially credible and that she retained the capacity to perform a limited range of light work. The ALJ credited Plaintiff's allegation that she had difficulty reaching overhead with her arms. The ALJ also included functional limitations in the RFC finding in recognition of Plaintiff's cervical and

shoulder impairments, including limitations in balance, climbing, and exposure to machine vibrations. The ALJ's credibility determination is well supported by medical and nonmedical evidence in the record, and the ALJ properly analyzed the evidence with respect to the issue of credibility. The VE testified that an individual with Plaintiff's RFC and vocational characteristics could perform Plaintiff's previous job as a postal clerk and other jobs available in the economy, including the unskilled, light jobs of ticket taker and office helper. This testimony provided substantial evidence to support the ALJ's step four and alternative step five determination. Therefore, the Commissioner's decision should be affirmed.

RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING the decision of the Commissioner to deny Plaintiff's application for benefits. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before     March 3rd , 2014, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed

herein is denied.

      ENTERED this  11th  day of  February , 2014.

*Gary M. Purcell*
GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE